# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***Mutual Management Services, Inc. v. Swalve*, 2011 IL App (2d) 100778**

| | |
|---|---|
| Appellate Court Caption | MUTUAL MANAGEMENT SERVICES, INC., Plaintiff-Appellant, v. RICHARD D. SWALVE and KIMBERLY S. SWALVE, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-10-0778 |
| Filed | August 30, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Collection agency's amended complaint to collect assigned debts owed to medical providers was properly dismissed with prejudice where the effective dates of the assignments did not comply with the Collection Agency Act to the extent that they were not clear, they were not the same assignments as those attached to the initial complaint, and they were signed on different dates from the original assignments |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 09-AR-629; the Hon. Gwyn Gulley, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

James C. Thompson, of Shriver, O'Neill & Thompson, of Rockford, for appellant.

Nathan Reyes and Jonathan Schaefer, both of Szymanski Koroll Litigation Group, of Rockford, for appellees.

Panel

JUSTICE McLAREN delivered the judgment of the court, with opinion.

Justices Hudson and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, Mutual Management Services, Inc. (MMS), appeals from the orders of the trial court dismissing with prejudice its amended complaint and denying its motion to reconsider. We affirm.

¶ 2     On July 10, 2009, MMS filed a three-count complaint against defendants, Richard and Kimberly Swalve, seeking to collect debts of just over $10,000 allegedly owed to three medical providers: SwedishAmerican Hospital, Radiology Consultants of Rockford, and Northern Illinois Imaging. MMS attached to the filed complaint assignments of the claims to MMS but failed to attach copies of those assignments to the complaint served on the Swalves. The Swalves filed a motion to dismiss, alleging, among other things, the lack of proper exhibits. The trial court granted the motion without prejudice and granted MMS leave to file an amended complaint, which it did on December 22, 2009. MMS attached as exhibits assignments of the claims from the three medical providers, all dated in December 2009, authorizations for legal action, and patient consent forms.

¶ 3     The Swalves then filed a motion to dismiss and, later, an amended motion to dismiss, which was brought pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2008)). The Swalves presented two grounds for dismissal: (1) the assignment documents violated section 8b of the Collection Agency Act (Act) (225 ILCS 425/8b (West 2008)); and (2) they received improper notice of the assignments under section 9-406 of the Uniform Commercial Code (UCC) (810 ILCS 5/9-406 (West 2008)). The trial court denied the amended motion to dismiss on the Act grounds but granted the motion on the UCC grounds and dismissed the amended complaint with prejudice. The court subsequently denied MMS's motion to reconsider, and this appeal followed.

¶ 4     Section 2-619(a)(9) of the Code provides for the dismissal of a cause of action where the claim asserted "is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2008). If the grounds for dismissal do not appear on the face of the pleading being attacked, the motion shall be supported by affidavit. 735 ILCS 5/2-619(a) (West 2008). A section 2-619 motion admits the legal sufficiency of the

complaint along with all well-pleaded facts and reasonable inferences drawn from those facts. *Giannini v. Kumho Tire U.S.A., Inc.*, 385 Ill. App. 3d 1013, 1015 (2008). In deciding a motion brought under section 2-619, a court is to interpret all pleadings in the light most favorable to the nonmoving party. See *Floyd v. Rockford Park District*, 355 Ill. App. 3d 695, 699 (2005). Our review of a trial court's decision regarding a section 2-619 motion is *de novo*. *Giannini*, 385 Ill. App. 3d at 1015.

¶ 5        As an initial note, the Swalves insist that their section 2-619 motion to dismiss "should have been characterized" as being brought under section 2-615 of the Code. While appellate review of decisions regarding motions to dismiss brought under both sections is *de novo* (see *Terraces of Sunset Park, LLC v. Chamberlin*, 399 Ill. App. 3d 1090, 1092 (2010)), the analysis applied to each is different. *In re Estate of Malbrough*, 329 Ill. App. 3d 77, 79 (2002). Section 2-615 attacks the legal sufficiency of the complaint by alleging defects on the face of the complaint; section 2-619 assumes that a cause of action has been stated but asserts that the claim is defeated by other affirmative matter. *In re Estate of Malbrough*, 329 Ill. App. 3d at 79. These motions differ "significantly." *Becker v. Zellner*, 292 Ill. App. 3d 116, 122 (1997). We will not consider the application of a Code section that was not raised or argued before the court below and that requires a different analysis.

¶ 6        MMS first contends that the Swalves failed to support their amended motion to dismiss with required affidavits. According to MMS, since "it is clear that the face of the Amended Complaint did not provide the grounds upon which the Defendants' Motion was based," affidavits were mandatory; in the absence of any affidavits, the Swalves "failed to meet their burden on the motion." However, MMS did not object to the absence of affidavits in the trial court, and thus it forfeited the issue on appeal. See *People ex rel. Abraham v. Allman*, 299 Ill. App. 189, 192-93 (1939).

¶ 7        MMS next contends that the trial court erred in determining that the Act "does not control the requirements of assignments and notices in consumer debt collection actions." MMS argues that, when statutes conflict, specific language trumps general language; therefore, the more "specific" Act should be applied instead of the "general" UCC.

¶ 8        The fundamental rule of statutory construction is to give effect to the legislature's intent; in seeking to ascertain that intent, we consider the statutes in their entirety, noting the subject matter that they address and the legislature's apparent objective in enacting them. *State of Illinois, Secretary of State v. Mikusch*, 138 Ill. 2d 242, 247 (1990). It is presumed that the legislature, in enacting statutes, acts rationally and with full knowledge of all previous enactments. *Mikusch*, 138 Ill. 2d at 247-48. We also presume that the legislature will not enact a law that completely contradicts another statute without an express repeal of it and that statutes that relate to the same subject are to be governed "by one spirit and a single policy." *Mikusch*, 138 Ill. 2d at 248.

¶ 9        Subpart 4 of the UCC is entitled "RIGHTS OF THIRD PARTIES." Within this part, section 9-406(a) is addressed to, among other things, discharge of account debtors and notification and identification of, and restrictions on, assignment of accounts, and it provides in relevant part:

        "[A]n account debtor on an account *** may discharge its obligation by paying the

-3-

assignor until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee. After receipt of the notification, the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor." 810 ILCS 5/9-406(a) (West 2008).

Section 8b of the Act provides in part:

"An account may be assigned to a collection agency for collection with title passing to the collection agency to enable collection of the account in the agency's name as assignee for the creditor provided:

(a) The assignment is manifested by a written agreement, separate from and in addition to any document intended for the purpose of listing a debt with a collection agency. The document manifesting the agreement shall specifically state and include:

(i) the effective date of the assignment; and

(ii) the consideration for the assignment.

\* \* \*

(e) No litigation shall commence in the name of the licensee as plaintiff unless: (i) there is an assignment of the account that satisfies the requirements of this Section \*\*\*." 225 ILCS 425/8b (West 2008).

¶ 10        MMS fails to demonstrate that the Act and the UCC sections dealing with assignments are actually in conflict. MMS notes that, in enacting the Act, the legislature could have included language requiring notice of assignment and demand, as it did in section 9-406(a) of the UCC, but it did not do so. However, this is not evidence of a conflict between the enactments; there would be no reason to include the same requirements in two separate statutes. This is an example of two statutes relating to the same subject that are to be governed "by one spirit and a single policy." *Mikusch*, 138 Ill. 2d at 248. The UCC provides that an account debtor must be provided with notice of an assignment before he can be required to pay an assignee; the Act specifies what assignment documents must show before an assignee may begin litigation. Thus, the provisions of the Act and the UCC should be read together, not set against each other, and neither statute should be read to "control" all of the requirements concerning assignments and notices in consumer debt collection actions.

¶ 11        Assuming, *arguendo*, that the Act were the exclusive governing statute regarding assignments and notices, we would still grant MMS no relief. In ruling on the Swalves' motion to dismiss, the trial court denied the motion as it related to the Act but granted it as to MMS's "failure to provide notice of assignment" under section 9-406(a) of the UCC (810 ILCS 5/9-406(a) (West 2008)). However, this court is not bound by the trial court's reasoning and may affirm on any basis supported by the record, regardless of whether the trial court based its decision on the proper grounds. *Rabin v. Karlin & Fleisher, LLC*, 409 Ill. App. 3d 182, 186 (2011).

¶ 12        Section 8b(a) of the Act provides that the document manifesting an assignment shall "specifically state and include" the effective date of the assignment and the consideration for the assignment. 225 ILCS 425/8b(a) (West 2008). The Act requires that the terms of an

assignment be "open and precise" to protect the consumer from repetitive litigation and debt collection abuse. *Business Service Bureau, Inc. v. Webster*, 298 Ill. App. 3d 257, 260 (1998).

¶ 13    Here, MMS filed its initial complaint on June 30, 2009. The three assignment documents contained clauses allowing consideration to the assignee "not to exceed" various percentages of the money recovered. The trial court dismissed that complaint without prejudice on various grounds, including "concerns" regarding the rate of compensation contained in the assignments. The court granted MMS leave to file an amended complaint, telling MMS that it "would recommend specifying the level of compensation" in the assignments.

¶ 14    MMS filed its amended complaint on December 22, 2009, and attached new assignment documents. These documents contained specific percentages for consideration and the same effective dates as the assignments attached to the initial complaint; however, the documents bore new execution dates. The assignment of claim from SwedishAmerican Hospital stated that the assignment was effective February 6, 2009; however, the signature of SwedishAmerican's representative was not notarized until December 16, 2009. The assignment from Radiology Consultants was purportedly effective May 17, 2007, but the president's signature was not notarized until December 21, 2009; the assignment from Northern Illinois Imaging bore an effective date of October 17, 2007, and a notary seal of December 15, 2009.

¶ 15    Although MMS cleared up the issue of specificity of consideration under section 8b(a)(ii) of the Act (225 ILCS 425/8b(a)(ii) (West 2008)), the amended complaint still runs afoul of the Act. First, the effective dates of the assignments are not clear, as required by section 8b(a)(i) (225 ILCS 425/8b(a)(i) (West 2008)). While the purported effective date of each assignment is clearly labeled, those dates are from 10 to 31 months prior to the notarized signatures of the assignors' representatives on the assignments. "It is important that a debtor know the exact date of the assignment so that he will know when he must deal with the assignee and when he must cease dealing with the assignor." *Business Service Bureau, Inc.*, 298 Ill. App. 3d at 259. Such large gaps between the purported effective dates and the actual signatures on the documents do not provide the specificity required by the Act or contemplated by *Business Service Bureau, Inc.*

¶ 16    Further, section 8b(e)(i) of the Act specifies that "No litigation shall commence in the name of the licensee as plaintiff unless: (i) there is an assignment of the account that satisfies the requirements of this Section ***." 225 ILCS 425/8b(e)(i) (West 2008). The assignments attached to the amended complaint were not the same assignments attached to the initial complaint; they had different terms and were signed by the assignors' representatives on dates different from the original assignments. These were new assignments obtained well after this litigation was commenced on July 10, 2009. Thus, the assignments were improper under the Act, and application of the Act would not have prevented the dismissal of MMS's suit.

¶ 17    Since we have concluded that dismissal pursuant to the Act was proper, we need not address MMS's other arguments regarding the UCC.

¶ 18    MMS next contends that, even if dismissal was warranted, dismissal with prejudice was not supported by the facts. We disagree. We have concluded that the assignments that were

the subject of the amended complaint were improper under the Act. The trial court dismissed the amended complaint because "the documents submitted by Plaintiff do not provide sufficient notice of demand to Defendants" under the UCC. These documents were related to the defective assignments. There is no method available to cure the defective assignments and notices of demand.

¶ 19 However, a party does not get only one shot at obtaining and executing upon an assignment. See *National Recovery Ltd. Partnership v. Pielet*, 306 Ill. App. 3d 686, 689 (1999). Dismissal of the amended complaint with prejudice does not preclude MMS from obtaining new, proper assignments of the debts from these creditors, giving proper notice of demand under the Act and the UCC, and, if unsuccessful in its attempts to collect, filing a new suit based on the new assignments.

¶ 20 For these reasons, the judgment of the circuit court of Winnebago County is affirmed.

¶ 21 Affirmed.